IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| SEBIN JOSPEH § | |
| § | CIVIL ACTION NO. 4:22-CV-00973- |
| v. § | SDJ-AGD |
| § | |
| THE DIRECTOR OF TEXAS SERVICE § | |
| CENTER, UNITED STATES | |
| CITIZENSHIP AND IMMIGRATION | |
| SERVICES | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the court is Plaintiff Sebin Joseph's Motion for Summary Judgment (Dkt. #15), Defendant Director of Texas Service Center, United States Citizenship and Immigration Services' Response and Cross-Motion for Summary Judgment (Dkt. #16), Plaintiff's Reply to Defendant's Response and Response to Defendant's Cross-Motion for Summary Judgment (Dkt. #17), Defendant's Motion to Strike Plaintiff's Reply to Defendant's Response and Response to Defendant's Cross-Motion for Summary Judgment (Dkt. #18), Plaintiff's Response to Defendant's Motion to Strike (Dkt. #19), and Defendant's Reply in Support of its Cross-Motion for Summary Judgment (Dkt. #20). Having considered the pleadings and all other relevant filings, the court recommends that Plaintiff's Motion for Summary Judgment (Dkt. #15) be **DENIED**. The court further recommends that Defendant's Cross Motion for Summary Judgment (Dkt. #16) be **GRANTED**. The court further recommends that Defendant's Motion to Strike Plaintiff's Combined Reply (Dkt. #18) be **DENIED** as moot. The court further recommends that Plaintiff's Motion for Ruling (Dkt. #22) be **DENIED** as moot. The court finally recommends that Plaintiff's claims be **DISMISSED WITH PREJUDICE**.

## BACKGROUND

*Factual Background*

On July 27, 2022, Plaintiff filed an I-140 petition with Defendant the United States Citizen and Immigration Services ("USCIS"), requesting immigrant classification as an "alien of extraordinary ability in the field of 3D Printed construction." (Dkt. #1 at 3). On August 9, 2022, Defendant issued a Notice of Intent to Deny ("NOID") because Defendant concluded that Plaintiff did not qualify for the "extraordinary ability" visa category. (Dkt. #1 at 3). On September 6, 2022, Plaintiff sent Defendant a letter in response to the NOID, which included 27 additional exhibits. (Dkts. #1 at 3; #14 at 15–51). On September 20, 2022, Defendant issued a decision denying Plaintiff's I-140 petition ("Decision"). (Dkts. #1 at 3; #14 at 3).

*Plaintiff's Complaint*

On November 17, 2022, Plaintiff filed suit against Defendant in the Eastern District of Texas, Sherman Division. (Dkt. #1). In his Complaint, Plaintiff alleges that Defendant violated the Administrative Procedure Act ("APA") in several ways. (Dkt. #1 at 3–12). First, Plaintiff argues, Defendant violated the APA because Plaintiff's evidence "in its totality" establishes a "career of acclaimed work." (Dkt. #1 at 3). Plaintiff goes on to argue that Defendant violated the APA by discounting Plaintiff's experience as a judge for various awards (Dkt. #1 at 4). Next, Plaintiff argues that Defendant violated the APA by "skipping over" evidence from testimonials and other evidence of "Plaintiffs contributions to the field of 3D Printed Construction in the USA and internationally." (Dkt. #1 at 5–6). Moreover, Plaintiff argues that "in order to establish the totality [of the circumstances], each and every piece of evidence must be considered." (Dkt. #1 at 6). Plaintiff also alleges that it was error to refer to Plaintiff's field as "3D Printing" instead of "3D Printed Construction." (Dkt. #1 at 7). Plaintiff also points out mistakes in the Decision, for

example, that Von Perry, LLC was incorporated in 2022, but the Decision claims it was incorporated in 2021. (Dkt. #1 at 8). Finally, Plaintiff argues that "USCIS issued confusing updates regarding the application through their online portal." (Dkt. #1 at 10).

*Motions for Summary Judgment*

In his Motion for Summary Judgment, Plaintiff "seeks judgment on the claims mentioned in the Complaint and on the Defendant's affirmative defenses." (Dkt. #15 at 1). In response, Defendant moves for summary judgment on Plaintiff's claims, alleging that "Defendant did not act arbitrarily, capriciously, or contrary to law in denying Plaintiff's petition for immigrant classification as an alien of extraordinary ability." (Dkt. #16 at 1). Defendant argues that it followed the two-step inquiry promulgated by *Kazarian*, because after Defendant determined that Plaintiff "met the initial evidentiary threshold of satisfying at least three of the regulatory criteria necessary for the visa classification," Defendant considered the totality of the evidence and issued its decision on the merits (Dkt. #15 at 11). Defendant further alleges that Plaintiff impermissibly attempts to shift the burden to establish eligibility for a certain immigration classification to Defendant (Dkt. #16 at 16). In his reply, Plaintiff offers a thorough recitation of his evidence and argues that the totality of the evidence contradicts the findings in Defendant's Decision. (Dkt. #17 at 17–56).

## LEGAL STANDARDS

*The Immigration and Nationality Act – Noncitizens of Extraordinary Ability*

In 1990, Congress created a new employment-based immigration preference for aliens of "extraordinary ability in the sciences, art, education, business, or athletics" (an "EB-1 visa"). *Amin v. Mayorkas*, 24 F.4th 383, 386 (5th Cir. 2022) (citing 8 U.S.C. § 1153(b)(1)(A)). "This visa, colloquially dubbed the 'Einstein' or 'genius' visa, is available to those whose extraordinary

ability 'has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation.'" *Id.* at 386–87. The EB-1 visa is "highly sought after" because an EB-1 recipient is exempt from the job-offer and labor-certification requirements, and no offer of employment in the United States is required. *Id.* at 387; 8 C.F.R. § 204.5(h)(5).

Under the Immigration and Nationality Act ("INA"), a noncitizen may qualify for the EB-1 visa if "the alien seeks to enter the United States to continue work in the area of extraordinary ability," and "the alien's entry into the United States will substantially benefit prospectively the United States." 8 U.S.C. § 1153(b)(1)(A). "Extraordinary ability" means "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2)); *see Goncharov v. Allen*, No. 3:21-CV-1372-B, 2022 WL 17327304, at *1 (N.D. Tex. Nov. 29, 2022) ("For example, 'these visas have been granted to world-class professional golfers, Nobel laureates, and even Beatles legend John Lennon.'") (citation omitted). To meet the high "extraordinary ability" standard, the petitioner must submit evidence that they have "sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise." 8 C.F.R. § 204.5(h)(3). That evidence must include evidence of "a major, international recognized award," or at least three of the following:

> (i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;
>
> (ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;
>
> (iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which

classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;

(iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;

(v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

(vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

(vii) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;

(viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;

(ix) Evidence that the alien has commanded a high salary or other significantly high emuneration for services, in relation to others in the field; or

(x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

8 C.F.R. § 204.5(h)(3). If a petitioner believes that the enumerated criteria "do not readily apply to [the petitioner's] occupation, the petitioner may submit comparable evidence to establish [the petitioner's] eligibility." 8 C.F.R. § 204.5(h)(4). And, while no offer of employment is required, "the petition must be accompanied by clear evidence that the alien is coming to the United States to continue work in the area of expertise." 8 C.F.R. § 204.5(h)(5). Examples of such evidence include: a letter from a prospective employer; evidence of prearranged commitments such as contracts; or a statement from the beneficiary detailing plans on how they intend to continue their work in the United States. *Id.*

The USCIS follows the two-step analysis promulgated in *Kazarian* to review a petitioner's EB-1 visa application. *See Kazarian v. U.S. Citizenship and Immigration Servs*, 596 F.3d 1115 (9th Cir. 2010). First, the USCIS determines whether the petitioner provided evidence

of a one-time achievement or evidence satisfying at least three of the listed regulatory criteria. *See id.* at 1119 ("Receipt of the Nobel Prize is the quintessential example of a major award."). If the petitioner meets either threshold at the first step, the USCIS then "conducts an 'overall merits determination' to decide whether the applicant is one of the few at the top of their field." *Id.* at 1119; *Amin*, 24 F.4th at 391 (citation omitted). For the USCIS to issue an EB-1 visa, the petitioner's evidence must demonstrate "sustained national or international acclaim" and establish that the petitioner is one of a small percentage who has risen to the very top of their field of endeavor to be eligible for this extraordinary ability category. 8 U.S.C. § 1153(b)(1)(A)(i); 8 C.F.R. § 204.5(h)(2); *see Kazarian*, 596 F.3d at 1119–20.

*The Administrative Procedure Act*

The Administrative Procedure Act ("APA") provides for judicial review of final agency decisions. 5 U.S.C. §§ 702, 704. Under the APA, a court may hold unlawful and set aside agency action only if it finds the agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). The scope of review under the "arbitrary and capricious" standard is "extremely restrictive." *Austin v. U.S., Dept. of the U.S. Army*, 614 Fed. Appx. 198, 202–03 (5th Cir. 2015); *Kazarian*, 596 F.3d at 1120–21 (listing cases). Additionally, a reviewing court is not to substitute its judgment for that of the agency; instead, the court is to show deference to the expertise of the agency. *Amin*, 24 F.4th at 393–95 ("Extraordinary ability is such an elite level of accomplishment that recognizing it necessarily entails a judgment call."). A reviewing court considers whether "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

*Brown v. Napolitano*, 391 Fed. Appx. 346, 349 (5th Cir. 2010) (internal quotation marks and citation omitted). Although a reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given," it may nevertheless "uphold a decision of less-than-ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285–86 (1974); *see Garland v. Ming Dai*, 141 S.Ct. 1669, 1679 (2021) ("[A] reviewing court must 'uphold' even 'a decision of less-than-ideal clarity if the agency's path may reasonably be discerned.'") (citation omitted); *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F. 3d 1125, 1132 (9th Cir. 2010) (explaining that a court may uphold an agency's decision if it, "articulated a rational relationship between its factual findings and its decision"). "Thus, if the agency considers the factors and articulates a rational relationship between the facts found and the choice made, its decision is not arbitrary or capricious." *State of La., ex rel. Guste v. Verity*, 853 F.2d 322, 327 (5th Cir. 1988) (citation omitted).

***The Summary Judgment Standard***

The Fifth Circuit has consistently upheld "the use of summary judgment as a mechanism for review of agency decisions." *Girling Health Care, Inc. v. Shalala*, 85 F.3d 211, 214 (5th Cir. 1996). "The explanation for this lies in the relationship between the summary judgment standard of no genuine issue as to any material fact and the nature of judicial review of administrative decisions. . . [T]he administrative agency is the fact finder. Judicial review has the function of determining whether the administrative action is consistent with the law—that and no more." *Id.* (quoting 10B Fed. Prac. & Proc. Civ. § 2733 (4th ed.)). Put differently, because a court's review under the APA is limited to the administrative record, the standard for summary judgment under Federal Rule of Civil Procedure 56 does not apply. *See Gadhave v. Thompson*, No. 3:21-CV-2938-D, 2023 WL 6931334, at *1 (N.D. Tex. Oct. 19, 2023); *Mann v. Holder*, No. 1:12-CV-1926 AWI

BAM, 2014 WL 4795032, *2 (E.D. Cal. Sept. 25, 2014) (citing *Occidental Engineering Co. v. Immigration & Naturalization Service*, 753 F.2d 766, 769–70 (9th Cir. 1985)). *"*Instead, when a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal." *Gadhave*, 2023 WL 6931334, at *1 (internal quotations and citation omitted). As such, summary judgment in this context "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Id.*

## ANALYSIS

The gravamen of Plaintiff's argument is that Defendant came to the wrong conclusion after considering Plaintiff's evidence. *See* (Dkts. #15; #17). However, "[a]rguing that the agency was compelled to find extraordinary ability is a bit like saying that the only possible grade on an exam was an A+." *Amin*, 24 F.4th at 395. Therefore, the court recommends that Plaintiff's claims be dismissed with prejudice because Defendant's decision was not arbitrary, capricious, or contrary to law.

***Defendant's decision with respect to the first step in the* Kazarian *analysis was not arbitrary, capricious, or contrary to law.***

Pursuant to the *Kazarian* analysis, Defendant determined, and the Decision reflects, that Plaintiff did not submit evidence of a one-time achievement (Dkt. #14 at 5). Instead, Plaintiff submitted evidence for consideration for five out of the ten categories of evidence in 8 C.F.R. § 204.5(h)(3): (1) published material in professional or major trade publications or other major media relating to his work (four media articles discussing Plaintiff's projects and business); (2) judge of the work of others as a reviewer or judge in the field (selected to judge three awards based on reputation in the industry); (3) original contributions of major significance in the field (created a program that consolidates the construction process under a computerized system, introduced

Geopolymer concrete, and innovated business coalitions); (4) leadership role in a distinguished organization (co-founded Von Perry, Inc. and created a demand for 3D printed buildings); and (5) commercial success in the performing arts (documentation of future projects). (Dkt. #14 at 5–6). Based on this evidence, Defendant determined that Plaintiff met three eligibility criteria: (1) evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought (8 C.F.R. § 204.5(h)(3)(iv)); (2) evidence of the alien's original scientific, scholarly, artistic, athletic, or business- related contributions of major significance in the field (8 C.F.R. § 204.5(h)(3)(v)); and (3) evidence that the beneficiary has performed in a leading or critical role for organizations or establishments that have a distinguished reputation (8 C.F.R. § 204.5(h)(3)(viii)). (Dkt. #14 at 5–6).

Even so, Plaintiff argues that "out of five categories of evidence submitted by Plaintiff, the agency has only skimmed through four of them." (Dkts. #15 at 11–12; #17 at 5). Specifically, Plaintiff alleges that Defendant did not analyze the evidence under 8 C.F.R. § 204.5(h)(3)(x), which requires "evidence of the alien's commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales." (Dkts. #15 at 11–12; #17 at 5). As Defendant points out, "[w]hile only three criteria are required to establish eligibility, the USCIS decision provided detailed analysis regarding the fourth claimed eligibility criteria," 8 C.F.R. § 204.5(h)(3)(iii), as well as the three qualifying criteria. (Dkt. #16 at 12).

### Commercial Success – Eligibility Criteria Not Met[1]

As a threshold matter, Defendant is correct that any alleged error as to Defendant's analysis of category 8 C.F.R. § 204.5(h)(3)(x) is harmless because Defendant already established that

---

[1] "Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales." 8 C.F.R. § 204.5(h)(3)(x).

Plaintiff's evidence satisfied three requisite categories under *Kazarian*, just not this category (Dkt. #16 at 13); s*ee Kazarian*, 596 F.3d at 1122 (explaining that while the agency should have found that petitioner established two out of the ten categories, its conclusion that petitioner did not qualify for any category was harmless because the statute requires petitioner to satisfy three categories). And, even if Defendant erred by neglecting to include an analysis of the "commercial success" category, it appears that Plaintiff is attempting to shroud evidence of commercial success in 3D Printed Construction as "commercial success in the performing arts." Indeed, Defendant correctly argues that "[b]ecause Plaintiff did not work in the field of performing [arts] and the evidence does not demonstrate that he has attained commercial success in the field of 3D Printing Construction, Defendant would have dismissed this criterion as an inappropriate classification of his work and for his failure to provide the requisite regulatory evidence." (Dkt. #16 at 14). Thus, Defendant was not required to analyze categories beyond the three required by 8 C.F.R. § 204.5(h), and even if it had, Plaintiff's evidence was insufficient to satisfy the "commercial success in performing arts" category.

As Plaintiff points out, Defendant may analyze miscategorized evidence under 8 C.F.R. § 204.5(h)(4), which states that "[i]f the above standards do not readily apply to the beneficiary's occupation, the petitioner may submit comparable evidence to establish the beneficiary's eligibility." Still, any alleged error regarding 8 C.F.R. § 204.5(h)(4) is harmless because Defendant had already established the three requisite categories under *Kazarian*. (Dkt. #16 at 13). *See Kazarian*, 596 F.3d at 1122. Plaintiff goes on to argue that "[a]ny analysis based in common sense would conclude that the evidence provided does qualify as comparable evidence to the 8 CFR section 204.5(h)(3)(x)." (Dkt. #17 at 56). However, Plaintiff's argument regarding his commercial

success is merely a recitation of the evidence and is thus an improper invitation for the court to reweigh evidence. *See* (Dkts. #15 at 23–24; #17 at 50–57); *Amin*, 24 F.4th at 393.

### Published Materials– Eligibility Criteria Not Met [2]

As a threshold matter, the court points out that any alleged error regarding 8 C.F.R. § 204.5(h)(3)(iii) is harmless because Defendant already established that Plaintiff satisfied three requisite categories under *Kazarian*, just not this category (Dkt. #16 at 13); *see Kazarian*, 596 F.3d at 1122. Even so, Plaintiff argues that Defendant's conclusion that "material that only cites, quotes, references the petitioner is insufficient to meet the plain language of the criterion" (Dkt. # 14 at 5) is "a made-up requirement." (Dkt. # 15 at 17). Defendant argues in response that "the articles provided 'no discussion of the petitioner and the petitioner's work' within the field of endeavor or any analysis of that work." (Dkt. #16 at 13). Because Defendant "consider[ed] the factors and articulat[ed] a rational relationship" between the published materials and the conclusion that the published materials did not satisfy the 8 C.F.R. § 204.5(h)(3)(iii) criterion, Defendant's decision regarding Plaintiff's published materials was not arbitrary or capricious. *See State of La., ex rel. Guste*, 853 F.2d at 327.

***Defendant's decision with respect to the second step in the* Kazarian *analysis was not arbitrary, capricious, or contrary to law.***

Because Plaintiff's evidence satisfied the first step of the *Kazarian* analysis, Defendant moved on to the second step: an overall merits determination regarding whether Plaintiff is one of the few at the top of his field. (Dkt. #14 at 6–7); *see Kazarian*, 596 F.3d at 1119. Because the court finds that Defendant's decision with respect to the second step in the *Kazarian* analysis was not arbitrary, capricious, or contrary to law, Plaintiff's Motion should be denied.

---

[2] "Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation[.]" 8 C.F.R. § 204.5(h)(3)(iii).

REPORT AND RECOMMENDATION – Page 11

### Judging Experience[3]

While Plaintiff's judging experience satisfied one of the criteria under 8 C.F.R. § 204.5(h)(3) for the first step of the *Kazarian* analysis, Defendant found that the judging experience did not demonstrate that Plaintiff had risen to the top of his field pursuant to the second step. (Dkt. #14 at 6). Defendant considered three judging events: the Stevie American Business Awards, the Global Disruptors Awards, and the International Business Awards, all taking place between March and June 2022. (Dkt. #14 at 6). Plaintiff recites the evidence he presented to Defendant, then argues:

> This evidence proves that the Plaintiff was invited to be a judge due to his reputation in the field of 3D Printed Construction. Most people on the judging panel have decades of experience in their respective fields. The very fact that the Plaintiff was invited to be a part of those panels - even with a relatively short career - shows his reputation as a pioneer in the field of 3D Printed Construction. These awards are internationally reputed and have been existed [sic] for decades. The submissions are coming from businesses all over the world, therefore, inviting an unqualified individual will damage the reputation of these awards. And also, Plaintiff has no professional or personal connections with the selection committee. Analysis based on common sense will conclude the evidence of these judging instances as proof of Plaintiffs reputation as a top professional in his field of endeavor. Thus, Defendant's argument above contradicts the evidence in the file.

(Dkt. #15 at 11–12). Plaintiff goes on to state that "[o]ther than questioning the timeline of the judging activities, Defendant has not raised any other issues with the evidence." (Dkt. #15 at 16). But Defendant states the following in the Decision:

> While the record shows that the petitioner judged the three events between March and June 2022, fulfilling the job requirements of a judge does not automatically demonstrate that an individual has extraordinary ability. The record does not demonstrate how judging three events a few months prior to filing the petition represents sustained national or international acclaim at the very top of the field. The submitted evidence does not demonstrate that the judging instances set the petitioner apart from others in the field, or that it places him among 'that small percentage who [has] risen to the very top of his field of endeavor. Also, the

---

[3] "Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought[.]" 8 C.F.R. § 204.5(h)(3)(iv).

REPORT AND RECOMMENDATION – Page 12

> Petitioner has not demonstrated that the judging record is consistent with having a 'career of acclaimed work' and sustained national or international acclaim.

(Dkt. # 14 at 6) (internal citations omitted). Defendant further explains that Plaintiff's judging experience came from events which reviewed submissions from various industries, and thus "Plaintiff failed to demonstrate that his selection as a judge and 'the judging instances set the petitioner apart from others *in the field*,' or places him among the small percentage who has 'risen to the very top of the *field of endeavor*.'" (Dkt. #16 at 17) (emphasis in original). Therefore, because Defendant "consider[ed] the factors and articulat[ed] a rational relationship" between Plaintiff's judging experience and the conclusion that the judging experience did not indicate that Plaintiff was at the top of his field, Defendant's decision regarding Plaintiff's judging experience was not arbitrary, capricious, or contrary to law. *See State of La., ex rel. Guste*, 853 F.2d at 327.

### Original and Major Contributions to the Field[4]

In the Decision, Defendant states:

> The letters of support reference the petitioner's achievements in his company and contribution to the field. However, the petitioner did not submit evidence to establish that his achievements in the area in which he was focused demonstrate that he had garnered 'sustained national or international acclaim' or that his 'achievements have been recognized in the field through extensive documentation.'

(Dkt. #14 at 6–7). In his Motion, Plaintiff argues that Defendant "does not provide a reason for disregarding the market data, news reports, construction documents, construction permit, contracts, evidence of new market demand created by the Plaintiff's work, his speaking engagements, and a multitude of other evidence are not corroborating the reference letters." (Dkt. #15 at 13) (internal citations omitted). However, the Decision indicates that Defendant reviewed the evidence and concluded that the evidence was insufficient to establish "'sustained national or

---

[4] "Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field[.]" 8 C.F.R. § 204.5(h)(3)(v).

REPORT AND RECOMMENDATION – Page 13

international acclaim' or that his 'achievements have been recognized in the field through extensive documentation.'" (Dkt. #14 at 6–7). Indeed, as Defendant explains in its response, the evidence Plaintiff submitted to demonstrate his alleged original or major contributions to the field did "nothing more than attempt to predict the future impact of Joseph's ARECS program, the use of Geopolymer concrete in 3D printed construction and the growth of the industry." (Dkt. #16 at 20–21). As such, Defendant did not rely on factors that Congress did not intend for it to consider, entirely fail to consider an important aspect of the problem, offer an explanation that runs counter to the evidence, or offer an implausible explanation. *See* (Dkt. #14 at 6–7); *Brown*, 391 Fed. Appx. at 349. The court declines Plaintiff's invitation to reweigh the evidence and finds that Defendant's decision with respect to Plaintiff's original or major contributions to the field was not arbitrary, capricious, or contrary to law.

### Leading or Critical Role[5]

With regard to 8 C.F.R. § 204.5(h)(3)(viii), Defendant concluded that "the record does not show how the petitioner's success in this company has resulted in national or international acclaim." (Dkt. #14 at 7). Plaintiff's argument consists of a recitation of the evidence and a conclusion that because "Defendant has not provided any counterevidence to justify its position, [it] therefore[] should have agreed with Plaintiff's claims." (Dkt. #15 at 15). The court will not reweigh evidence nor will it relieve Plaintiff of his evidentiary burden by requiring Defendant to produce counterevidence. *Amin*, 54 F.4th at 391.

Plaintiff also alleges that "Defendant indirectly ask[ed] for evidence of Plaintiff's academic qualification in the field of 3D printed construction." (Dkt. #15 at 17). However, Plaintiff does not articulate the language in the Decision to which Plaintiff is referring, and the court's reading of

---

[5] "Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation[.]" 8 C.F.R. § 204.5(h)(3)(viii).

REPORT AND RECOMMENDATION – Page 14

the NOID does not reveal any explicit or implicit requests regarding Plaintiff's academic qualifications. *See* (Dkt. 14 at 3–7). As such, the court finds that Defendant's analysis with respect to 8 C.F.R. § 204.5(h)(3)(viii) was not arbitrary, capricious, or contrary to law.

### Totality of the Evidence Standard

In his Motion, Plaintiff asserts that the Decision does not contain a "single instance of discussing an actual piece of evidence by providing a reasonable argument for a why a particular piece of evidence fails to prove the sustained acclaim." (Dkt. #15 at 18). However, the Decision contains several instances of evidentiary analysis. For example, with respect to media evidence in step one of the *Kazarian* analysis, the Decision states that "[t]he petitioner submitted material from three media sources. The material only cites, quotes, references, or includes a photograph of the petitioner. There is no discussion of the petitioner and the petitioner's work." (Dkt. #14 at 5). Or, at step two, the Decision states that "[w]hile the letters discuss the impact and results of the Petitioner's leadership, the record does not reflect that he was hired based on his sustained national or international acclaim[.]" (Dkt. #14 at 7). Plaintiff also argues that "Defendant has not brought any evidence of arguments against Plaintiff's claims." (Dkt. #15 at 18). The court reiterates that it will not relieve Plaintiff of his evidentiary burden by requiring Defendant to produce counterevidence. *Amin*, 54 F.4th at 391. Thus, because Defendant's analysis of the evidence was sufficient under *Kazarian*, its Decision was not arbitrary, capricious, or otherwise contrary to law.

### Defendant's References to the Evidence

In his Motion, Plaintiff alleges that "Defendant makes multiple factually wrong claims about Plaintiff's petition, as a reason for its denial, further proving his claim that Defendant was acting based on bias against Plaintiff rather than the facts." (Dkt. #15 at 20). Specifically, Plaintiff argues that 1) Defendant stated "Von Perry Inc. was incorporated in 2021 when it was incorporated

in 2022; 2) Defendant says Plaintiff claimed the "field was invented in the early 2000's" which Plaintiff refutes; 3) Defendant referred to "colleagues of the petitioner" when four of the five letters were from individuals outside Plaintiff's organization; and 4) Defendant referred to Plaintiff's "professional or academic awards" when Plaintiff submitted no evidence of such awards. (Dkt. #15 at 20–22). At the outset, the court notes that what Plaintiff describes as "factually wrong claims" are better characterized as immaterial mistakes. It is not the purpose of judicial review of an agency decision to "'fly speck' an agency decision for 'technical deficiencies.'" *Pension Benefit Guar. Corp. v. Wilson N. Jones Mem'l Hosp.*, 374 F.3d 362, 367 (5th Cir. 2004) (citing *Louisiana Env't. Soc'y, Inc. v. Dole*, 707 F.2d 116, 122–23 (5th Cir.1983)). Moreover, to the extent that there are mistakes in the Decision, the court may "uphold a decision of less-than-ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc.*, 419 U.S. at 285–86. As such, the alleged mistakes argued by Plaintiff do not render Defendant's Decision arbitrary, capricious, or contrary to law.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the court recommends that Plaintiff's Motion for Summary Judgment (Dkt. #15) be **DENIED**. The court further recommends that Defendant's Cross Motion for Summary Judgment (Dkt. #16) be **GRANTED**. The court further recommends that Defendant's Motion to Strike Plaintiff's Combined Reply (Dkt. #18) be **DENIED** as moot. The court further recommends that Plaintiff's Motion for Ruling (Dkt. #22) be **DENIED** as moot. The court finally recommends that Plaintiff's claims be **DISMISSED WITH PREJUDICE**.[6]

---

[6] Because the court is recommending dismissal of Plaintiff's claims, it does not reach the question of whether, in the event that Plaintiff's Motion were granted, the proper remedy is remanding the case back to the USCIS or reversal of the Decision. *See* (Dkts. #15 at 26–27; #16 at 21; #17 at 61–62).

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 12th day of March, 2024.**

_____
AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE